21 So.2d 721

**TREAT v. HUNT OIL CO. et al.**

No. 37365.

Feb. 19, 1945.

Rehearing Denied March 26, 1945.

A. S. Drew, of Minden, and Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for Hunt Oil Co. and A. D. Turner, defendants and appellants.

Campbell & Campbell, of Minden, for W. R. Lunsford, appellant.

R. D. Watkins, of Minden, for plaintiff-appellee.

HIGGINS, Justice.

Frank B. Treat instituted this action to be declared the owner of an undivided one-eighth interest in and to the oil, gas, and

other minerals underlying the land described as the S½ of the SE¼, Section 18, Township 21 N., Range 9 West, in Webster Parish, Louisiana, under a deed from Sidney Turner to him, dated April 30, 1938, and for an accounting of the proportionate part of the royalties accruing to him.

The defendants, A. D. Turner and W. R. Lunsford, adverse claimants of the one-eighth mineral interests, aver that Treat's author in title, Sidney Turner, on April 30, 1938, when he sold to Treat, had previously conveyed this mineral interest in the land to the defendants' author in title, P. F. Childs, on February 19, 1937, and, therefore, the defendants and not the plaintiff were the lawful owners of the mineral interest in controversy. The defendant, Hunt Oil Company, the mineral lessee and the purchaser of the oil produced from this tract of land, interposed the same defense. The defendant W. R. Lunsford, who purchased a one-sixteenth mineral interest in the land or one-half of the one-eighth mineral interest in litigation, on December, 14, 1940, from A. D. Turner, called his vendor in warranty to defend his title, and prayed, in the event it be decreed that he was not the owner of the one-sixteenth mineral interest claimed, he be granted a judgment against his vendor for the sum of $1,500 cash, the purchase price thereof.

There was judgment in favor of the plaintiff and against Turner and Lunsford, recognizing and decreeing the plaintiff to be the owner of the undivided one-eighth mineral interest in question and for an accounting for the royalty accruing under this interest resulting from the production of oil from the land under the lease and the sale thereof to the Hunt Oil Company. There was judgment also in favor of Lunsford and against Turner under the call of warranty for $1,500, and the rejection of Turner's demand against Lunsford for credit for the royalty paid him as the owner of the one-sixteenth mineral interest. The defendants appealed.

It is conceded that the facts found by the trial court are correct and they are substantially stated as follows:

P. F. Childs and Charley Childs jointly and in equal proportions owned the fee simple title to the S½ of the SE¼ of Section 18, Township 21 N., Range 9 W., in Webster Parish, Louisiana. On March 7, 1936, Charley Childs sold his one-half interest therein to Bobby Turner without any mineral reservation. On August 27, 1936, Bobby Turner and P. F. Childs, as joint and equal owners of the fee simple title to the property, conveyed one-fourth of all of the oil, gas and other minerals on, in, and under the tract of land to Sam York. On September 1, 1936, Bobby Turner conveyed to Sam York one-eighth of all of the oil, gas, and other minerals on, in, and under the land. On November 13, 1936, Bobby Turner conveyed to Sidney Turner his undivided one-half interest in the tract of land, without any mention of the prior mineral sales. On February 15, 1937, Sam York reconveyed to Bobby Turner the same one-eighth mineral interest in the land which he had previously acquired on September 1, 1936 from Bobby Turner. On February 19, 1937, Bobby Turner conveyed to Sidney Turner a one-eighth min-

eral interest in the land. As a result of the previous transactions, on February 19, 1937, Sidney Turner and P. F. Childs were the joint and equal owners of the land, less the one-fourth mineral interest therein, which had been conveyed previously by Bobby Turner and P. F. Childs to Sam York on August 27, 1936. On February 19, 1937, Sidney Turner conveyed to P. F. Childs "his undivided one-half interest in and to" the land with the following reservation: "The said vendor, Sidney Turner, reserving unto himself, his heirs and assigns, one-fourth of the oil, gas and other minerals in, on and under the said described property." (This is the deed which must be interpreted herein.) On February 19, 1937, P. F. Childs conveyed to Charley Childs a one-eighth interest in the minerals under the land. On April 9, 1938, and on April 16, 1938, Charley Childs in two separate sales of a one-sixteenth mineral interest each, sold and transferred his one eighth mineral interest to Frank B. Treat, the plaintiff herein. On April 12, 1938. Sidney Turner conveyed to Frank B. Treat an undivided one-eighth mineral interest in the land and again on April 30, 1938, conveyed another one-eighth mineral interest therein to Frank B. Treat. It is this last sale made by Sidney Turner to Frank B. Treat on April 30, 1938, conveying a one-eighth mineral interest under the land, which is in contest here. The Hunt Oil Company, the owner of an oil, gas and mineral lease covering this tract of land, refused to recognize the validity of this one-eighth mineral interest conveyed by Sidney Turner to Frank B. Treat on April 30, 1938, taking the position that Sidney

Turner did not own any further mineral interest in the land on that date. Briefly, when Sidney Turner made the sale of the one-eighth mineral interest to Frank B. Treat on April 12, 1938, he thereby divested himself of all of his remaining ownership in the minerals in the land. On December 14, 1940, A. D. Turner, one of the defendants, purchased from P. F. Childs the one-eighth mineral interest in controversy. A. D. Turner then conveyed an undivided one-sixteenth mineral interest in the land, or one-half of the above one-eighth mineral interest, on July 1, 1941, for $1,500 cash, to W. R. Lunsford, one of the defendants herein. The Hunt Oil Company paid A. D. Turner and his transferee, W. R. Lunsford, the royalties due for this one-eighth mineral interest, by virtue of a mineral deed in Turner's favor from P. F. Childs, dated December 14, 1940. This deed contains the following provision: "It is further agreed and understood between the parties hereto that this mineral purchase as above described, shall only come out of the undivided one-half interest in and to the property above described which was acquired by P. F. Childs from Sidney Turner, as above described, and in the event that this one-eighth interest is not owned by this vendor herein out of that particular part purchased from Sidney Turner, that then, and in that event, and in that event only, the vendor herein will refund to the vendee herein the purchase price and no more."

The question for consideration, in the light of the facts of the case and the law, narrows down to the proper construction to be placed upon the general granting clause

in the deed and the mineral reservation made by Sidney Turner when he sold his undivided one-half interest in the title to the land to P. F. Childs on February 19, 1937. On that date, it is not disputed that Sidney Turner owned an undivided one-half interest in the fee simple title and an undivided three-eighths interest in the minerals. This is true because Bobby Turner and P. F. Childs, the joint and equal owners of the fee simple title, sold to Sam York, on August 27, 1936, the one-fourth mineral interest. The defendants contend that when Sidney Turner reserved a one-fourth interest in the minerals on February 19, 1937, in the land, he legally, by that same deed, warranted title to the other one-fourth mineral interest in the land and, therefore, when the second mineral sale was made to Frank B. Treat on April 30, 1938, of one-eighth of the minerals therein, the conveyance was null and void, because at that time he was no longer the owner of any mineral interest in the land, having fully divested himself of all mineral interests therein by the previous sales and conveyances, notwithstanding the express reservation of one-fourth of the minerals in, on and under the described property.

It will be observed that when P. F. Childs and Bobby Turner, the owners of the fee simple title to the property, dismembered their complete ownership thereof to the extent of alienating a one-fourth mineral interest to Sam York on August 27, 1936, Childs knew that he and his co-owner were each then entitled to one-half of the surface rights and three-eighths of the mineral interest therein, respectively. When Bobby Turner, on November 13, 1936, conveyed to Sidney Turner his undivided one-half interest in the tract of land, without any mention of the prior registered mineral sales, it was impossible for Sidney Turner to acquire under this transfer a one-half interest in the minerals, because P. F. Childs and Bobby Turner had previously conveyed, by a registered deed, a one-fourth interest in the minerals to Sam York. Therefore, on February 19, 1937, when Sidney Turner sold to P. F. Childs "his undivided one-half interest in the described property" or land with the express reservation of one-fourth of the minerals therein, P. F. Childs knew that Sidney Turner was conveying to him the title to one-half of the surface rights and a one-eighth mineral interest in the land, under the general granting and warranty clauses of the deed, because he was apprised of the fact at that time Sidney Turner, having reserved one-fourth of his three-eighth mineral interest therein, had only the one-eighth mineral interest which he was conveying. Consequently, it cannot be said that P. F. Childs, with such actual knowledge that he had, contemplated receiving a one-fourth mineral interest in the land by virtue of the general granting and warranty clauses thereof. He certainly cannot be treated as an innocent person, who bought in good faith and paid a consideration for an undivided one-half of the land and one-fourth mineral interest in it. Whatever possible doubt might have existed as to the intention of P. F. Childs in making this acquisition is certainly eliminated by the provision that he placed in the mineral deed in favor of A. D. Turner on December 14, 1940. There, he unmis-

takably shows that he was more than dubious that he had acquired from Sidney Turner, in view of the express one-fourth mineral reservation, a greater mineral interest than one-eighth in the land. If he had thought that he was acquiring a one-fourth mineral interest under that deed, he certainly would not be the first one to doubt his own title to it, as he unquestionably did by placing the referred to provision in the registered deed of December 14, 1940. It was the actual knowledge that he had of the outstanding one-fourth mineral interest in favor of Sam York that made him take notice of the fact that it was impossible for Sidney Turner to reserve a one-fourth mineral interest in the land, and, at the same time, grant him, P. F. Childs, a one-fourth interest, because Sidney Turner only had a three-eighths mineral interest on that date. P. F. Childs was not only aware of the fact that his title to this additionally claimed one-eighth mineral interest was not well founded, but he also informed his vendee, A. D. Turner, of the situation, for the parties to that sale agreed therein that in the event P. F. Childs was not the owner of this one-eighth mineral interest, the purchase price only would be refunded. In short, P. F. Childs protected himself by placing A. D. Turner on guard against this contingency and, therefore, A. D. Turner cannot be said to be an innocent purchaser without knowledge. The same is true as to W. R. Lunsford. He obtained no better title than his vendor.

It is our opinion that P. F. Childs did not consider that he was acquiring a one-fourth mineral interest in the land by virtue of the sale to him by Sidney Turner on February 19, 1937, but it was the intention of both parties, clearly and unambiguously expressed, that Sidney Turner would remain the owner of a one-fourth mineral interest in the property under the reservation clause therein contained; and that A. D. Turner and his vendee, W. R. Lunsford, are in no better position as against Frank B. Treat and his author in title, Sidney Turner, because of the express provision placed by Childs in the deed that if he were not the owner that the vendee would only recover the purchase price. United Gas Public Service Co. v. Roy, La. App. 147 So. 705; Shoreline Oil Corporation v. Guy et al., La.App., 189 So. 348-352; 16 Tulane Law Review, 152; Karcher et al. v. Karcher et al., 138 La. 288, 70 So. 228; Liles v. Pitts, 145 La. 650, 82 So. 735; Reliance Homestead Ass'n v. Brink, 173 La. 331, 137 So. 52; Gaines v. Crichton, 187 La. 345, 174 So. 666; and Reynaud v. Bullock et al., 195 La. 86, 196 So. 29.

Counsel for the defendants rely upon Young et al. v. Sartor, et al., 152 La. 1064, 95 So. 223. In that case the plaintiffs purchased a plantation from the defendants under the representation that there was sufficient timber on the land to supply a pumping machine for ten years. It developed that the defendants had previously sold the timber to a third party, who removed it, under its previously registered deed. The plaintiffs sued the defendants for damages and proved that they had paid the full price for timbered land. Upon showing that the value of the timber on the land sold to them was worth $4,000, the court awarded them that amount in

damages. The prior registered sale to the purchaser of the timber gave it a superior right thereto over the subsequent purchaser of the land. But, as between the original parties to the deed to the plantation, the vendors had sold the innocent vendees without any notice or knowledge of the previous sale of the timber something that the vendors did not then own, and, consequently, were liable to the plaintiffs, who had paid a consideration for the timber which the defendants were unable to convey to them. Obviously, the case is not in point here where the record shows that P. F. Childs, defendant's author in title, knew of the outstanding one-fourth mineral interest in favor of Sam York under his own deed and the one-fourth mineral interest in favor of Sidney Turner under his own deed containing the express reservation, and in his act of alienation informed his transferee of his uncertainty as to the title to this mineral interest.

Having reached the conclusion that P. F. Childs is not the owner of the undivided one-eighth mineral interest in controversy, it is our opinion that the trial judge properly sustained the call in warranty and ordered an accounting.

A. D. Turner's contention that he is entitled to offset the royalty payments received by his vendee, W. R. Lunsford, against the $1,500, or purchase price, is without merit because Lunsford would be liable to the Hunt Oil Company for the royalty payments erroneously made to him.

For the reasons assigned, the judgment appealed from is affirmed; the costs of both courts to be paid by the defendants;

W. R. Lunsford to be reimbursed his pro rata share of the costs of court under his call in warranty against A. D. Turner.